UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
     vs.                            ) No. 4:10-CR-00611(SNLJ)
                                    )
LOWELL AUGHENBAUGH,                 )
                                    )
                Defendant.          )


SENTENCING HEARING
BEFORE THE HONORABLE STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE
OCTOBER 5, 2011


APPEARANCES:

FOR PLAINTIFF:        MATTHEW T. DRAKE, ESQ.
                      OFFICE OF U.S. ATTORNEY
                      111 South Tenth Street, Suite 2000
                      St. Louis, MO  63102
                      (314) 539-2200


FOR DEFENDANT:        ADAM D. FEIN, ESQ.
                      ROSENBLUM, SCHWARTZ, ROGERS & GLASS
                      120 S. Central Avenue, Suite 130
                      St. Louis, MO  63105
                      (314) 862-4332


                      LANCE B. THURMAN
                      WILLIAMS & ROBINSON
                      901 N. Pine Street, 4th Floor
                      P.O. Box 47
                      Rolla, MO  65402
                      (573) 341-2266


COURTROOM CLERK:      LISA KRESKO

REPORTED BY:          DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                      Official Court Reporter
                      United States District Court
                      111 South Tenth Street, Third Floor
                      St. Louis, MO  63102
                      (314) 244-7449

```
1              (PROCEEDINGS BEGAN AT 1:20 PM.)

2              THE CLERK:  All rise.  This Court is again in

3     session.  You may be seated.

4              THE COURT:  All right.  This is United States of

5     America v. Lowell Aughenbaugh.  Case Number is 10-CR-611.

6              The Government is present by Assistant United States

7     Attorney Matthew Drake.  Defendant is present in person and by

8     counsel, Adam Fein.

9              There are a few -- This matter is set today for

10    sentencing, but there are a few preliminary matters that we

11    need to handle.  I think I've dealt with most of the motions

12    that have been coming in, two or three per day leading up to

13    the sentencing date.  The only one I think I've not ruled on

14    is the fourth Motion for Leave to File Under Seal, and I'll

15    grant that motion.  I'll ask the Clerk to see if there are any

16    other outstanding motions.

17             Mr. Aughenbaugh, I've received the Presentence Report

18    from the Probation Office, and there's been an official

19    revised final version that was filed just yesterday, and so I

20    want to know if you've received a copy of the report, have you

21    read it, and have you reviewed it in detail with your lawyer?

22             THE DEFENDANT:  I seen the draft, Your Honor.

23             THE COURT:  The first one.  There are just minor

24    corrections to the final draft.

25             THE DEFENDANT:  Okay.
```

1          THE COURT:  Have you read it then?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  And you've reviewed it in detail

4    with your lawyer?

5          THE DEFENDANT:  I have.

6          THE COURT:  Now in chambers you indicated, Mr. Fein,

7    that some of the objections that you raised you're not

8    interested in pursuing at this time?

9          MR. FEIN:  No.  No, Your Honor.  There were just

10   minor objections to the PSR.

11         THE COURT:  Yeah.  Let's just go over those briefly.

12   I got Document No. 70 that was filed on the 29th of September.

13   You object to Paragraph 8, Paragraph 11, Paragraph 12,

14   Paragraph 67.

15         MR. FEIN:  That's correct, Your Honor.

16         THE COURT:  All right.  How do you want to address

17   those now?  Are those -- Are those contested by the Government

18   or ---

19         MR. DRAKE:  Your Honor, I received the Defendant's

20   objections, and they uniformly do not impact the *Guidelines* or

21   anything like that.

22         THE COURT:  Right; that's right.  They're just more

23   really factual discrepancies.

24         MR. DRAKE:  Correct.  I do think, though, that the

25   Presentence Report is correct.  I think what they're doing is

1    supplementing information to what the Presentence Report says.

2    In other words, for instance, Objection No. 2 to Paragraph 11

3    that indicates that Jacob Aughenbaugh possessed the keys, I

4    don't have any quarrel with that.  It supplements what's

5    already in the PSR.  So to the extent that these are

6    objections that are adding additional information for the

7    Court's consideration, I don't disagree with them, and I think

8    that that's what they do.

9           THE COURT:  I do say that most of them are predicated

10   as -- for clarification.

11          MR. DRAKE:  Correct.

12          THE COURT:  What about No. 8?  That's the only one

13   that's not in that kind of a category.

14          MR. DRAKE:  Oh.  Well, Your Honor, I am aware and I

15   do believe that it is correct that there is a deposition which

16   the witness that's identified, Jacob Aughenbaugh, stated this

17   in the deposition.  However, I would contest that the PSR is

18   still accurate.  It does say the police reports indicated that

19   Mr. Aughenbaugh told his son that he planned to blow up the

20   Rolla Police Department.  Those police reports do say that,

21   and the PSR's findings that they say it are correct.  The

22   issue is whether or not he's retracted that statement.  In

23   this deposition, I think that he has, the witness that's

24   identified here.

25          MR. FEIN:  Perhaps by agreement, Your Honor, we can

1   simply put in there, "Under deposition, Mr. Aughenbaugh

2   further stated."

3            THE COURT:  Okay.

4            MR. DRAKE:  I have no problem with that, Your Honor.

5            THE COURT:  In that case -- I take it then that the

6   Government's willing to agree to these clarifications, as you

7   might want to call them then.

8            MR. DRAKE:  Yes, Your Honor.

9            THE COURT:  All right.  In that case, I'll ask

10  counsel for Defendant:  With close clarifications that the

11  Court will note, is there any other objection or additions or

12  corrections to the Presentence Report for Defendant then?

13           MR. FEIN:  There are not, Your Honor.

14           THE COURT:  All right.  For the Government?

15           MR. DRAKE:  And we have no objections to the report.

16  Thank you.

17           THE COURT:  All right.  In that case, the Court will

18  adopt as its findings of fact the factual statements set out

19  in the Presentence Report.

20           I'll review with you specifically, though, the

21  *Sentencing Guidelines* calculations.

22           Total Offense Level is 21.  Criminal History Category

23  is 1.  The statute provides on Count I of up to ten years; on

24  Count IV of up to five years.  The *Guidelines* provisions are

25  37 to 46 months.  Probation is not authorized.  The period of

1   supervised release is two to three years.

2          Any objections by the Government?

3          MR. DRAKE:  No, Your Honor.

4          THE COURT:  By Defendant?

5          MR. FEIN:  There are not, Your Honor.

6          THE COURT:  All right.  In that case, the Court will

7   adopt as its additional findings of fact the *Guidelines*

8   calculations as stated.

9          What is the Government's recommendation?

10         MR. DRAKE:  Your Honor, the Government's

11  recommendation would be that which is consistent with our

12  original Plea Agreement.  Our -- While I think the Probation

13  Office correctly calculated the guideline range to be a Total

14  Offense Level of 21 in the applicable guideline range, in the

15  Plea Agreement the parties agreed to a Total Offense Level of

16  19 which equated to a sentence of 30 to 37 months.  I would

17  ask that the Court sentence the Defendant within that

18  guideline range, albeit I do think the Probation Office's

19  findings are correct.

20         And I have also indicated to defense counsel that

21  anything in that guideline range is acceptable to the

22  Government in the -- in the 30-month range is acceptable.  And

23  I was opposing, though, any downward variance or departure

24  from that range.

25         THE COURT:  All right.  And I want to indicate, too,

1    that I have received statements, victim impact statements,

2    that I've read and considered.

3           In the same light, I've reviewed the sentencing

4    memorandum that you filed, Mr. Fein, and all the other

5    materials that you filed, including the various letters from

6    friends and his employees and so forth.  I've read all of

7    those, and I'll consider them very carefully.

8           So do you wish to make your recommendation then?

9           MR. FEIN:  Yes, Your Honor.  I've asked the

10   Governement -- I've asked the Court follow the agreement that

11   we have struck with the Government.  The Government did not

12   enter that Plea Agreement blindly or lightly.  They took

13   serious the facts in the case and evaluated it fairly as they

14   do often.

15          I'd just like to make a few comments about what I

16   think the Court's primary concerns likely are in this case and

17   how to adjust those.

18          I think this case is fundamentally about mental

19   health issues.  I think the way -- The purposes of sentencing

20   that impacts most are those purposes that relate to public

21   safety, and I think the way in which this Court can best

22   address public safety concerns is to a variety of conditions

23   it imposes upon Mr. Aughenbaugh that ensure his compliance

24   with the law and with the behavior that the Court will expect.

25          And I would suggest the following, Your Honor:

1          The Court can place a mental health condition on him

2     to involve himself in treatment.

3          The Court can place him on electronic monitoring to

4     make certain that he stays where he's supposed to stay and

5     doesn't stray from that area.

6          The Court can impose travel restrictions on him.

7          The Court can also impose upon him a "no contact"

8     provision with certain members of his family, if it wishes.

9          I think those conditions would most likely address

10    the primary concerns this Court has.  And should

11    Mr. Aughenbaugh fail in any way to comply with the conditions

12    the Court imposes, the Court would always be free to revoke

13    his supervised release.  I don't think that will ever be

14    necessary, based on my conversations with Mr. Aughenbaugh.

15         What I know of him is that it is -- he is a man who

16    wants to return to court -- return to work, return quickly to

17    revive his business.

18         Behind me on the right are a large number of people

19    who have known Mr. Aughenbaugh much longer than I; who support

20    him; who continue to support him throughout this ordeal of

21    his, and who know him for the man he is; the good and kind man

22    that he is and can be.  That doesn't excuse his offense

23    behavior in this case which, as the Bureau of Prisons, I

24    think, pointed out in the report, it was aberrant.

25         And I think that should -- When you look at the

1   totality of his life, he's in his forties now; without any

2   meaningful criminal history.

3        I know the Court has concerns about the firearms.

4   Many of those firearms, some of them have been sold, to our

5   knowledge, already.  He will not be allowed to possess or

6   handle firearms in the future.  That is the law.  He is aware

7   of that, and I've had extensive conversations with him about

8   that matter.  He is aware of that, and he is willing to

9   comport his conduct with the requirements of the law and

10  refrain from possessing or being near firearms.

11       I have no doubt that he is committed to that, and I

12  have no doubt that he wishes for nothing more than to carry on

13  with his life in a law abiding way.

14       I really do believe, Your Honor, if you put those

15  conditions on him, that he will not fail the Court.  I would

16  ask the Court to give him that chance and that opportunity.

17  He has been confined for 20 months here on the federal case.

18  He's been to the Bureau of Prisons.  He's been to the jail.

19  He's been back and forth.  He has seen what it's like.  He

20  also knows what it's like to live a life of work, and that's

21  the life he wants to return to.  He does not want to spend his

22  life in jail.  He wants to get back to the friends that are

23  sitting behind me, those who support him.  And he's prepared

24  to make whatever effort he has to to do so, Your Honor.  And I

25  am confident he will not fail you.

1          I would ask you to abide by the Plea Agreement that

2    the Government and I had struck; to impose a sentence of 30

3    months and to impose those conditions, whatever other

4    conditions the Probation Office feels appropriate.

5          Your Honor, I think if you put him in prison for 10

6    or 15 or 20 more months, whatever number of months more, it's

7    not going to address the primary concerns that the Court has.

8    What will are those conditions I've noted.  He has been

9    confined for a significant period of time already.

10          He is contrite.  He knows what he has done, and he's

11   accepted things now in his life that he hasn't in the past,

12   and he wants to move forward.

13          So I'd ask the Court to abide by that Plea Agreement

14   and give him that chance.  I think if the Court is uncertain

15   of anything, it ought to error on giving him that opportunity,

16   given the confinement he's already been through and given the

17   very tight constraints the Court can place on him.

18          THE COURT:  Do you wish to make a statement?

19          MR. FEIN:  Your Honor, I talked to Mr. Aughenbaugh

20   about making a statement at some length, but he does have two

21   cases pending and basically part of my advice was not to make

22   a statement.  But I can tell you this:  He did relay the

23   following to me and I will relay it to you:  That he is sorry

24   for his actions.  He does not wish to harm his family.  They

25   meant a lot to him.  He loved them deeply.  He is hoping that

1    at one point in time in the future he can reconcile with them.

2    He has had visits from his son, too.  He has had communication

3    with his two daughters.  He hopes in the future at sometime

4    that he will be able to further open those lines of

5    communication and potentially reconcile.

6           He understands at the same time that his marriage is

7    at an end and that he will have to move on.  He wants his

8    family to know that he regrets his actions on that day.  He

9    would not make the same mistakes today that he's made then,

10   and he intends to never do so again and take steps necessary

11   to make sure that that's so.

12          THE COURT:  I have some questions of your client.

13   Are you going to instruct him that he can't answer my

14   questions or ---

15          MR. FEIN:  No, no, no.  I've talked to him just

16   briefly.  When I walked back into the courtroom, I mentioned

17   that to Mr. Aughenbaugh, and I think he wants to answer your

18   questions to the best that he can, Your Honor.  So given our

19   discussions previously, even though I've asked him not to make

20   a statement, if you do want to ask him questions, I'm prepared

21   to let you ask him.

22          THE COURT:  Here's my problem with your case:  I

23   believe that it was triggered by some kind of a mental

24   illness.  You've been diagnosed with that.

25          THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  Yeah.  But the problem is at first or at

2  least for a long time you denied that you had any problem of

3  that sort.  Now are you prepared to take mental health

4  treatment and medications, if necessary?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  No question about it?

7      THE DEFENDANT:  No question about it.

8      THE COURT:  Put yourself in my position.  I have a

9  defendant here who's very intelligent, a very hard worker, a

10  very successful businessman and, yet, who has a documented

11  mental illness that, combined with a hundred firearms, has

12  scared the community greatly, not to mention your own family.

13      Now my first job is to protect the community.  How

14  would you suggest I do that?

15      THE DEFENDANT:  I -- I don't know, Your Honor.  As

16  I -- Adam and I spoke about -- talked about this the past

17  couple of weeks, I did try to put myself in your shoes.  I

18  can't.  I can't.  You know, you've -- You know, you've got a

19  stack of paperwork, and it says what it says.

20      THE COURT:  I've never had a case like yours;

21  somebody that has the academic credentials and a business

22  record and success and, yet, crimes of this nature that are

23  incredibly serious crimes.

24      You know, on the one hand, I think you ought to get

25  the maximum sentence for what you've put everybody through.

1   On the other hand, I understand that a good part of it is

2   attributed to your mental illness.  I agree that it's in

3   complete remission, and that's all a very good sign.  My

4   concern, as is everybody's, is that you'll relapse.  So I have

5   to figure out what will -- is necessary to make sure that that

6   doesn't happen.

7        MR. FEIN:  Your Honor, if I may.  You just asked

8   Mr. Aughenbaugh about his thoughts about this, and we have

9   been talking about this and, frankly, we did talk about what

10  would you do if you were the judge.  He's asked me and I've

11  asked him.  A -- A theme that's recurred during those

12  conversations is just what you mentioned a moment ago and just

13  what I mentioned, Your Honor, and that is public safety would

14  be my concern, and how do I ensure that we meet those public

15  safety needs?  The Court has said that it's concerned that

16  there could be a relapse.  That is a possibility.  It's always

17  a possibility with mental illness, but it's simply a

18  possibility and not a reality today, and he not ought be

19  punished more for a potential that could arise in the future

20  when there are measures that could be taken today to reduce

21  the likelihood of that occurring.  And those measures are the

22  measures that we discussed a moment ago, the various

23  conditions of supervised release this Court can place him on.

24  If he varies from those in any way, the Court will have in its

25  power to exercise its power over him to ensure that he

```
 1    complies or goes back to the Bureau of Prisons.

 2              So if the Court's concerned about a future

 3    possibility or the ways today to reduce his likelihood of

 4    that, given the opportunity to show that that is not likely to

 5    happen because he will do what he just told you he will do,

 6    and that was to comply with the Court's conditions,

 7    participate meaningfully in therapy and abide by the

 8    recommendations of the therapist or doctor that is treating

 9    him.  And I have every reason to believe that's true, and the

10    people behind me would not be here today if they did not think

11    that's true.  They know, also, Mr. Aughenbaugh.  They believe

12    that is true.

13              THE COURT:  Well, they're going to have to help, too.

14              MR. FEIN:  Your Honor, they have helped.  Ms. Witter

15    who is over there on the front row, next to the left -- to the

16    right has been helping for 20 months at a -- to a degree that

17    I can't imagine.  She has been trying to run that business on

18    her own with the phone assistance of Mr. Aughenbaugh.  She's

19    probably at a greater state of anxiety today than

20    Mr. Aughenbaugh is because she's at her wits end trying to run

21    that business.  She'll do it.  She'll do it as long as this

22    Court requires Mr. Aughenbaugh to be gone, but she's been

23    doing it because she believes in Mr. Aughenbaugh.  She's known

24    him for years.  She is not a short-term friend.  She has known

25    him for over a decade.  Most of those people have, and they're
```

1   there looking at you like this because they know something

2   about him, too, that you don't, Your Honor.

3          And it's hard.  You are in a very difficult position.

4   You're looking at cold pieces of paper with all sorts of words

5   written by, you know, defense lawyers and prosecutors and

6   probation officers and police officers, and you've got to air

7   it out what's right, what's wrong; the wheat from the chaff,

8   Your Honor.  But at the end of the day, your concern is your

9   concern, and it's the same concern I have and the same concern

10  those individuals have, and that is:  How do we make sure that

11  Mr. Aughenbaugh's life moves forward in a productive manner

12  that threatens nobody, including himself?

13         He is prepared for that life again.  He is ready for

14  that life again, and he recognizes things now that he didn't

15  in the past.  Those people are there to support him.  They

16  will continue to support him.  There are more people ready and

17  available to support him that are in this court -- that are

18  not in this courtroom today.  If they were all here, it would

19  fill this room, Your Honor.  He will have that support.

20         And I would say this to you, Your Honor:  There's a

21  great deal of literature out there that indicates

22  rehabilitative services are much better provided for outside

23  of incarcerated settings, and his best chance of really

24  rehabilitating himself and returning to normalcy and a life

25  that he can be proud of and his friends can be proud of and

```
 1   his family can be proud of is for the Court to put those
 2   conditions on him and allow him to try to move forward, and at
 3   least give him that chance.
 4          If we don't know, it seems to me a big mistake,
 5   Your Honor, to say, "We don't know, and, therefore, we're
 6   going to incarcerate you forever or for longer periods of
 7   time."  If we don't know, let's give him that opportunity with
 8   those conditions because those conditions will satisfy those
 9   concerns.
10          I just read a report yesterday, Your Honor, that was
11   released, and the entire report is about how electronic
12   monitoring itself reduces the likehood of recidivism and to a
13   great extent because it can track you wherever you go.  You
14   can use a GPS system.  You can use a monitor.  They'll know
15   where he is at any moment.  And I guarantee you this:  That
16   the results of those monitors will reveal that he's in McCook,
17   Illinois at Ortek, trying to run that business and turn it
18   back into a profitable company, as it once was, and assisting
19   the people behind me and to my right.  I have no doubt about
20   that, Your Honor.  I just ask you, given the uncertainty, to
21   give him that chance because the offense was motivated by
22   mental health concerns to a degree, a significant degree, the
23   worst aspects of it, and they can be addressed in a rational
24   sound way through measures and technologies available to the
25   Probation Office.  And if for some reason that I turn out to
```

1    be wrong about that, this Court can return Mr. Aughenbaugh to

2    the Bureau of Prisons, but I don't think that day will ever

3    have to come, Your Honor.

4           THE COURT:  All right.  Is there any legal cause or

5    reason why sentence should not now be imposed?

6           MR. DRAKE:  Nothing from the Government, Your Honor.

7    Thank you.

8           MR. FEIN:  There is not, Your Honor.

9           THE COURT:  Mr. Aughenbaugh, pursuant to the

10   Sentencing Reform Act of 1984 and the provisions of Title 18,

11   United States Code, Section 3553(a), all the factors

12   thereunder, also in view of the sentencing objectives of just

13   punishment, general deterrence and incapacitation, it's the

14   judgment and sentence of the Court that you,

15   Lowell Aughenbaugh, is hereby committed to the custody of the

16   Bureau of Prisons to be imprisoned for a term of 37 months.

17   That term consists of a term of 37 months on each of Counts I

18   and IV, all such terms to be served concurrently.

19          Upon release from imprisonment, you shall be placed

20   on supervised release for a term of three years.  This term

21   consists of a term of three years on each of Counts I and IV,

22   all such terms to run concurrently.

23          Within 72 hours of your release from the custody of

24   the Bureau of Prisons, you shall report in person to the

25   Probation Office in the district to which you are released.

```
 1              I have a note here on my sentencing recommendations

 2    that I was going to sentence you to 60 months concurrent.

 3    Instead, I've given you 37 months.  The Guidelines provisions

 4    were 37 to 46 months.  It's the bottom end of the Guidelines.

 5    I really hope that you prove me right in my discretionary

 6    choice to give you that much lenient treatment, but I am going

 7    to load you up with a bunch of conditions of probation.  I'm

 8    going to do everything in my power to make sure that there's

 9    no relapse.

10              THE DEFENDANT:  All right.

11              THE COURT:  So while you're on this three-year

12    supervised release after you're released from custody, I order

13    that you shall comply with the standard conditions that have

14    been adopted by this Court and the following additional

15    conditions:

16              First is an electronic monitoring program.  I'd ask

17    the Probation Office for -- The Probation Officer's here.

18    Would you advise the Court about what you might recommend for

19    a location monitoring program?

20              PROBATION OFFICER:  Probably the best program for

21    Mr. Aughenbaugh would be to wear the ankle bracelet.  If

22    Your Honor has -- I'm not sure if Your Honor has the black

23    book of the conditions in there with regards to location

24    monitoring.

25              THE COURT:  All right.  I'll order that location
```

1   monitoring condition for a duration that should be determined

2   by the Probation Officer in the Probation Officer's

3   discretion.

4           Next, I order that you shall refrain from any

5   unlawful use of a controlled substance and submit to a drug

6   test within 15 days of commencement of supervision and at

7   least periodic drug tests thereafter for use of a controlled

8   substance.

9           Next, I order that you shall submit your person,

10  residence, office or vehicle to a search conducted by the

11  Probation Office based upon reasonable suspicion of contraband

12  or evidence of a violation of a condition of release and that

13  you shall warn any other residents that the premises may be

14  subject to searches pursuant to this condition.

15          Next, I order that you shall participate in a mental

16  health program approved by the Probation Office; that you

17  shall pay for the costs associated with services provided

18  based on a co-payment fee established by the Probation Office.

19  And that is critically important.  And if they say you need to

20  be on meds, that's all there is to it.  You got to do it,

21  whether you think you need them or not.  Understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Next, you shall participate in a domestic

24  violence counseling program approved by the Probation Office.

25  You shall pay for the costs associated with the services,

1   again based on a co-payment fee established by the Probation

2   Office.

3          Next, I order that you shall participate in a

4   cognitive behavioral treatment program as directed by the

5   Probation Office and, again, that you shall pay for the costs

6   associated with those services based on a co-payment fee.

7          Next, I order that you are prohibited from contact

8   with your former spouse, Joan Aughenbaugh; your -- the

9   spouse's parents, Terry and Evelyn Nadolski, and his children,

10  Cara, Jacob and Kristin Aughenbaugh, without the prior written

11  permission of the Probation Office, and that you shall report

12  to the Probation Office immediately, but in no event later

13  than 24 hours, any unauthorized contact with those

14  individuals.

15         Given our discussions in chambers, I'll ask the

16  Probation Officer if you have any other recommendations about

17  specific conditions of supervised release?

18         PROBATION OFFICER:  Your Honor, based on the letter

19  that was filed yesterday by the Government, it would probably

20  be appropriate for -- I apologize -- Amy Vogel to be added to

21  the "no contact."

22         THE COURT:  Yes.  I'll make that recommendation, too.

23  That's the sister.  Any other recommendations?

24         PROBATION OFFICER:  No, Your Honor.

25         THE COURT:  By the Government?

1          MR. DRAKE:  No, Your Honor.  Thank you.  That

2     addresses the Government's.

3          THE COURT:  I won't impose a fine in the case,

4     although it might be appropriate because you have the ability

5     to pay a fine, but, nonetheless, it's further ordered that you

6     shall pay to the United States a special assessment of $100 on

7     each of Counts I and IV, for a total of $200, that shall be

8     due immediately.

9          Mr. Aughenbaugh, I have to advise you:  You have a

10    right to appeal from this sentence within 14 days from this

11    date.  Failure to appeal within the 14-day period shall be a

12    waiver of your right to appeal.  You're also advised that you

13    are entitled to assistance of counsel in taking an appeal.

14    And if you're unable to afford a lawyer, one will be provided

15    for you.  And if you so request, the Clerk of the Court will

16    prepare and file a Notice of Appeal on your behalf.

17         Do you understand you have that right to an appeal?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Yeah.  That said, you gave up most every

20    ground that you might have had for bringing an appeal as part

21    of your Plea Agreement.  You remember that, too, don't you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you have any questions about this?

24         THE DEFENDANT:  No, Your Honor.

25         THE COURT:  Have you satisfied yourself that you can

```
 1   live up to these conditions of supervised release?

 2             THE DEFENDANT:  Yes, Your Honor.

 3             THE COURT:  I would hope so.

 4             MR. FEIN:  Your Honor, I -- I can see you're troubled

 5   by the case and by what may happen and rightfully so, and I

 6   am, too.  I don't think Mr. Aughenbaugh will let you down.

 7             THE COURT:  Anything further from the Government

 8   then?

 9             MR. DRAKE:  Your Honor, as part of our agreement, I

10   did agree to dismiss certain Counts, and those would be Counts

11   II, III and V at sentencing.  I would move to do so now.

12             THE COURT:  Those Counts are dismissed.

13             MR. DRAKE:  Thank you.

14             THE COURT:  Anything further from Defendant then?

15             MR. FEIN:  There is not, Your Honor.

16             THE COURT:  Mr. Aughenbaugh, I've made my position

17   clear with you.  You understand that if you do violate, you'll

18   be back into court and you'll have a lot more time.

19             I hope that you have gained something from the time

20   that you've been incarcerated.  I want you to get your life

21   back together even more so in the time that you have remaining

22   to serve.  And when you're released, take a different course.

23   Stay over in Illinois with these people who are your friends

24   and supporters and employees and make a good life for yourself

25   that way.
```

1          All right.  Good luck to you, sir.

2          THE DEFENDANT:  Thank you.

3          MR. FEIN:  Thank you, Your Honor.

4          MR. DRAKE:  Thank you, Your Honor.

5          (Hearing adjourned at 1:50 PM.)

CERTIFICATE


        I, Deborah A. Kriegshauser, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

        I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

        I further certify that this transcript contains pages 1 through 23 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

        Dated at St. Louis, Missouri, this 26th day of October, 2011.


                        _____

                             /s/ Deborah A. Kriegshauser

                        DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR

                             Official Court Reporter